RECEIVED
IN LAKE CHARLES, LA

FEB 21 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:98 CR 20058-005 |
| --- | --- | --- |
|  |  | 04 CV 0902 |
| VS. | : | JUDGE MINALDI |
| RONALD P. GREEN | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is a Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct a Sentence [doc. 703] filed by the defendant, Ronald P. Green ("Green"). The motion has been opposed by the Government and Green filed a Reply. This matter is fully briefed and ready for disposition.

In this §2255 motion, Green raises eight issues for review:

1) Whether Green was denied his Sixth Amendment right to effective assistance of counsel at trial and on appellate review;
2) Whether Green was denied his Sixth Amendment right to effective assistance of counsel in the district court because his counsel failed to argue a multiple conspiracies theory as a defense to the government's single large conspiracy theory;
3) Whether Green's conviction and sentence resulted in a denial of due process and a denial of effective assistance of counsel because of counsel's failure to object to the trial court's refusal to disqualify AUSA Brett Grayson;
4) Whether Green was denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to investigate, obtain and review copies of the original video tape supplied by the government;
5) Whether Green was denied effective assistance of counsel because counsel failed to file a Rule 60(b)(6) motion after his client requested such a motion be filed;
6) Whether Green was deprived of due process and effective assistance of counsel at trial when his counsel admitted, without Green's consent, in opening statements, to Green's limited involvement in the conspiracy;
7) Whether Green was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to advise Green of his career offender status; and

8) Whether Green was properly classified as a career offender and if so, whether Green was denied his Sixth Amendment right to effective assistance of counsel at sentencing because his counsel failed to object or challenge the use of prior state convictions.

Green then filed an amended motion which included a claim of a *Brady* violation.

## Procedural History

On June 11, 1998, a federal grand jury returned a seven-count indictment against six individuals including Ronald Green. Count One included Green in a conspiracy to possess with intent to distribute cocaine base. Count Three charged Green with distribution of cocaine base on May 5, 1995. Count Four charged Green with use of a communication facility in facilitating the commission of felonies under the Controlled Substances Act. Counts Five and Six charged Green with distribution of cocaine base on September 26, 1995, and September 23, 1995, respectively.

On September 23, 1998, the government filed an information of prior conviction indicating that defendant had prior convictions and was liable for an enhancement under 21 U.S.C. § 841(b)(1)(A) mandating a sentence of life imprisonment.

On December 8, 1998, a superseding indictment was returned. Two additional co-defendants were added to the indictment.

On January 8, 1999, Green filed a "Motion and Order for Authority to Engage a Transcriptionist and a Motion and Order to Require Government to Provide Defendants with Videotapes." On January 8, 1999, the court ordered the government to make available to defense counsel one complete unedited set of the videotapes.

On January 11, 1999, the government filed a response to the defendant's motion and indicated that it had provided the defense attorneys with edited videotapes of the drug transactions. The memorandum provided that the investigation had produced more than 150 videotapes and that

the government intended to introduce only the videotapes of the drug transactions charged in the indictment.

On January 12, 1999, the district court issued an amended order providing that the government had indicated that there were 76 videotapes ranging in length of one to four hours and that the majority of these tapes were not involved in the offenses. The government was ordered to make available for viewing one complete set of unedited videotapes. The government was to clearly mark which tapes it planned to use at trial and which tapes would not be used.

On February 24, 1999, in a motion regarding compliance with notice of intent to introduce co-conspirators statements, the government indicated that it had provided defense counsel with a copy of a videotape of a drug transaction on May 5, 1995. In the same motion, the government referred to a transaction on September 23, 1995 involving Ronald Green. The motion indicated that a copy of the videotape of that transaction was provided to counsel for Ronald Green.

A minute entry on February 24, 1999, indicates that the court had become aware of "problems with client/attorney relations." The court advised that "no counsel will be permitted to withdraw at this late date solely because of disagreements with clients regarding trial strategies." The motion to withdraw as counsel to Ronald Green filed by his attorney was denied.

On April 13, 1999, after a jury trial, Green was found guilty of Count One, conspiracy to possess with intent to distribute cocaine base or crack. The jury also found him guilty of Counts Three, Four, Five and Six.

On July 9, 1999, Green was sentenced to life imprisonment on Counts One and Six. He was sentenced to 360 months on Counts Three and Five. He was sentenced to 96 months on Count Four.

Green's conviction and sentence were affirmed by the Fifth Circuit. A decision was issued

as mandate on September 23, 2002. *United States v. Green*, 293 F. 3d 886 (5th Cir. 2002).

On April 28, 2003, filed into the district court record was a letter from the Supreme Court of the United States, dated April 21, 2003, indicating that the petition for writ of certiorari had been denied.

Subsequently Green has filed several motions requesting unedited and edited versions of the videotapes introduced at trial. On September 16, 2003, Green filed a notice of appeal as to the order denying his motion pursuant to Federal Common Law Access to Federal Judicial Records entered on August 5, 2003.

On September 5, 2003, Green filed a motion styled "Petitioner's Motion for Relief from Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure." This motion was denied on September 19, 2003. The order provided that Green had not advised the court why he needed the unedited tapes and his request was a "fishing expedition" which would not be condoned. On October 2, 2003, Green filed a notice of appeal.

The Fifth Circuit denied the above appeals as frivolous.

## Facts

Green and his family were involved in distributing drugs in Oakdale, Louisiana. They would obtain their cocaine base from Houston, Texas from one of their relatives, Corey Blount. Ronald Green was described as an individual who would sell drugs to support his own habit. He would distribute small amounts of crack to various individuals in exchange for some of the crack. Several undercover buys involved Green as the direct contact with the purchaser. These transactions occurred on May 5, 1995, May 8, 1995, September 22, 1995, and September 23, 1995. These transactions involved Johnny Green, Benjamin Blount, Ronald Blount and Corey Blount. The

4

confidential informants were John Wayne Jones and Oliver Sumbler.[1]

With respect to Count Four, John Jones testified at trial that the defendant made the call to arrange a transaction on May 15, 1995. Don Dixon, then an FBI agent, testified that he received a call from John Wayne Jones stating that he had made contact with Ronald Green who would call Houston to arrange the transaction on May 15th. Telephone records were subpoenaed from Ronald Green's mother's house where he lived. One telephone call was made from that home to a home in Houston occupied by Ronald Blount, Jr. and other relatives on May 8, 1995.[2]

## Law and Analysis

" 'Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.' " *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992) (per curiam)).

### Was Green denied his Sixth Amendment right to effective assistance of counsel at trial and on appellate review?

Green argues ineffective assistance of counsel. Evaluating whether counsel was ineffective is subject to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test requires first, "a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and second, a showing that the deficient performance so prejudiced the defense that the defendant was deprived

---

[1] Trial transcript pp. 942, 1285, 1293-1294, 1467-1469, 1577-1578, 1592, 1374-1407.

[2] Trial transcript pp. 1782-1790.

of a fair and reasonable trial.[3] The burden that *Strickland* poses on a defendant is severe.[4]

One way to satisfy the deficiency prong of the *Strickland* test is for the defendant to demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.[5] Given the almost infinite variety of trial techniques and strategies available to counsel, this court must be careful not to second guess legitimate strategic choices which may now, in retrospect, seem questionable or even unreasonable. The Fifth Circuit has stressed that, "great deference is given to counsel, 'strongly presuming that counsel has exercised reasonable professional judgment.'"[6]

In evaluating counsel's alleged ineffective assistance "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[7] Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine such confidence in the outcome.[8]

Count Four of the Indictment charged Green with using a communication facility in

---

[3]. *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064); *United States v. Gibson*, 985 F.2d 212, 215 (5th Cir. 1993).

[4]. *Proctor v. Butler*, 831 F.2d 1251, 1255 (5th Cir. 1987).

[5]. *Martin v. McCotter*, 798 F.2d 813, 816 (5th Cir. 1986), *cert. den.*, 107 S.Ct. 934, 479 U.S. 1056, 93 L.Ed.2d 985 (1987).

[6]. *Martin*, 796 F.2d at 816 (quoting *Lockart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986), *cert. den.*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987)).

[7]. *Strickland*, 466 U.S. at 693, 104 S.Ct at 2067.

[8]. *Strickland*, 466 U.S. at 694, 104 S.Ct at 2068.

facilitating the commission of felonies under the Controlled Substances Act in violation of 21 U.S.C. §843(b). At trial, John Jones, a confidential informant, testified that Ronald Green would make a telephone call to arrange the May 15 transaction. The telephone records fo Marie Green and Ella Blount were introduced into evidence. The records reveal that on May 8, 1995, at 9:25 p.m., a long distance call was placed from the residence of Marie Green to the residence of Ella Blount. At trial, Agent Dixon of the FBI, testified that a call was made from Marie Green's residence to the residence of Ella and Ronald Blount, Sr. for the purpose of making a drug deal. On cross-examination Agent Dixon testified that he did not know the names of the parties engaged in this conversation or what was said.[9] Based upon this evidence, Green was found guilty on Count Four.

Green argues that he received ineffective assistance of counsel because his attorney failed to interview and call as witnesses Marie Green and Ella Blount. Green claims that he told his attorney prior to trial that he did not make this call, provided the names and addresses of Ella Blount and Marie Green, yet his attorney failed to investigate or call these women as witnesses at trial. Green claims that these witnesses would have testified that they were involved in the May 8, 1995, telephone call. He claims that if Marie Green and Ella Blount had been permitted to testify at trial, he would not have been found guilty on Count Four. An affidavit of Marie Green is attached to Green's original motion as Exhibit A. In this affidavit, Marie Green states that "On May 8, 1995, I personally placed a long distance phone call from my home area code (318) 335-4578, to my daughter Ella Blount, in Houston Texas at area code (713) 734-3335." Exhibit B is an affidavit by Ella Blount in which she states that: "I am the daughter of Marie Green. My home address is 5435 Canterway, Houston Texas, in Harris County, my home phone number is (713) 734-3335. On May

---

[9] Trial transcript pp. 1782-1786.

7

8th, 1995, I received a long distance telephone call from my mother Mrs. Marie Green, who lives in Oakdale, Louisiana."[10]

Green also argues that this issue was not raised on appeal, because he was represented on appeal by the same attorney who was not required to raise his own trial ineffectiveness on appellate review.[11]

There are few *per se* or "bright-line" rules here; ineffective-assistance cases "turn on their individual facts." *Sanders v. Trickey*, 875 F.2d 205, 209 (8th Cir.), *cert. denied*, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989). Even if Mr. Williams, Green's attorney, unreasonably refused to investigate crucial witnesses, Green still must show a reasonable probability that, but for his lawyer's alleged poor performance, the outcome at trial would have been different.[12]

If Williams knew of the existence of Marie Green and Ella Blount before trial, he should have made some effort to contact or interview these people in furtherance of his client's defense. William's alleged complete failure to investigate witnesses would fall below the standard of a reasonably competent attorney practicing under prevailing professional norms.[13] The Government

---

[10] The affidavit further states that, at the time of the telephone call, her mother was in her residence at 610 Allen Street in Oakdale, Louisiana, and she was at her home. Ella Blount cannot testify as to the location of Marie Green at the time of the alleged call as she was admittedly in Houston at the time. She cannot testify where her mother was when she made the call.

[11] *Page v. United States*, 884 F.2d 300 (7th Cir. 1989).

[12] *Payne v. U.S.*, 78 F.3d 343, 348 (C.A.8 (Mo.) *en banc* 1996).

[13] Counsel has a duty to investigate crucial witnesses, once the identity of those witnesses is made known to counsel. *See Bell v. Georgia*, 554 F.2d 1360, 1361 (5th Cir.1977) (concluding that attorney's performance was unreasonable where he knew of alibi witnesses and did not contact them because accused agreed to contact witnesses himself); *Bryant v. Scott*, 28 F.3d 1411, 1418 (C.A.5 (Tex.),1994).

8

did not introduce an affidavit or any testimony from Green's counsel, David Williams, therefore an evidentiary hearing is warranted on this point to ascertain from Mr. Williams whether or not he knew of the existence of these women prior to trial and if he performed any investigation based upon these facts, or if any documentary evidence exists to support the allegation.

## Was Green denied his Sixth Amendment right to effective assistance of counsel in the district court because his counsel failed to argue a multiple conspiracies theory as a defense to the government's single large conspiracy theory?

Green argues that he was denied effective assistance of counsel because his trial counsel failed to interview government witnesses prior to trial, failed to establish a theory of defense, and failed during opening statements or in closing to argue a theory of multiple conspiracies rather than the single large conspiracy charged in the indictment.

Counsel for Green did ask for jury instructions as to multiple conspiracies.[14]

The government argues that this multiple conspiracy argument has no merit and was raised on direct appeal. In affirming the defendant's conviction, the Fifth Circuit did not discuss this issue. The opinion provides that the Fifth Circuit did not discuss the issues that it considered meritless.[15] The government argues that the lack of viability of this defense is manifested in the Fifth Circuit's summary dismissal and in the trial court's hesitance to instruct the jury as to multiple conspiracies. This court agrees.

Green's attorney cannot be considered ineffective for failing to develop this theory of defense.

---

[14] Trial transcript, p. 1703.

[15] *Green v. United States*, 293 F3d at 895.

Did Green's conviction and sentence result in a denial of due process and a denial of effective assistance of counsel because of counsel's failure to object to the trial court's refusal to disqualify AUSA Brett Grayson?

Green argues that his attorney should have moved for the disqualification of AUSA Brett Grayson. Green alleges that Grayson was a potential witness to the plea agreements entered with other witnesses. The government argues that the signing of a plea agreement by a prosecutor does not bar that attorney from acting as trial counsel.

A prosecutor may properly bring out the terms of a plea agreement on direct examination. *United States v. Dockray*, 943 F.2d 152, 156 (1st Cir.1991). The fact that AUSA Brett Grayson was the prosecutor in a case involving several of the witnesses who would testify against Green is not prosecutorial misconduct, nor does the fact that Grayson orchestrated the plea agreements with the co-defendants make him a witness. Green's counsel was not ineffective for failing to move for the removal of the prosecutor.

Was Green denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to investigate, obtain and review copies of the original video tape supplied by the government?

Green argues that his attorney was ineffective because he failed to fully investigate and review copies of the original videotape of the transaction on September 23, 1995. He argues that if his attorney had viewed the unedited videotapes, he would have discovered that Green never gave Oliver Sumbler the drugs, but returned the money to him. The record indicates that Williams asked to view the unedited tapes and had the opportunity to do so.[16] At trial, Williams asked that the jury

---

[16] Rec. docs. 232, 282.

be permitted to watch the entire tape.[17] The court stated:

> You have seen the tapes, I assume, and the original that you wanted to see because we took this up some time ago and gave you the opportunity to sit there in front of that thing and watch blank space, or whatever was there. I assume that you have taken advantage of it and done it. You know what's on the tapes. You know whether there is anything material, if there could be anything gained by watching the original tapes.[18]

The Government argues that, contrary to Green's allegations, his attorney did review the unedited tapes. The government also argues that the defendant was not prejudiced by his attorney's actions because the trial testimony supports the conviction.

The evidence at trial showed that on September 23, 1995, Oliver Sumbler, an informant for the Allen Parish Sheriff's Office, purchased 57.87 grams of crack cocaine from Johnny Green and Ronald Green.[19] Sumbler testified that, as shown on the videotape, on September 23, 1993, he was in the car and through the car window he talked to Johnny Green and gave him $1800 for drugs.[20] According to Sumbler, the videotape depicted the transaction with Ronnie Green.[21] Sumbler testified that he was waiting for the crack that he had just purchased.[22] Sumbler testified that Ronnie Green

---

[17] Trial transcript, p. 1037.

[18] Trial transcript, pp. 1587, 1593-1594, 1596.

[19] Trial transcript pp. 1587, 1593-1594, 1596.

[20] Trial transcript p. 1594.

[21] Trial transcript pp. 1595-1596.

[22] Trial transcript p. 1596.

11

passed him the package of drugs.[23] After Sumbler obtained the drugs, he turned them over to Detective Chuck Hurst.[24] On cross-examination, the witness stated that Ronnie Green was the individual that handed him the crack.[25]

Detective Hurst testified that on September 23, 1995, before using Sumbler to purchase drugs from Green, he searched Sumbler and his vehicle. He also installed the video equipment in Sumbler's car. After the transaction, he again searched Sumbler and the vehicle. Sumbler gave him the package containing the drugs which was marked and handed to the evidence officer.[26]

Green's assertion that he never gave Sumbler the drugs is not supported by the record. There is no indication that the unedited tape would prove otherwise. There is no evidence that Green's attorney was ineffective in his handling of the videotapes.

### Was Green denied effective assistance of counsel because counsel failed to file a Rule 60(b)(6) motion after his client requested such a motion be filed?

Rule 60(b) of the Federal Rules of Civil Procedure provides 6 alternative grounds for relief: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or

---

[23] Trial transcript p. 1597.

[24] Trial transcript pp. 1597-1598.

[25] Trial transcript p. 1609.

[26] Trial transcript pp. 1626-1628.

12

discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from operation of the judgment." Fed.R.Civ.P. 60(b).

Green argues that his counsel was ineffective because he did not file a Rule 60(b)(6) motion when he was asked to do so.

Green argues that Count Six of the indictment charged him with a violation of 21 USC §841(a)(1) and 18 USC §2, distribution of cocaine base. Green was convicted of Count Six. Probation calculated the sentencing range at 360 months to life. The court sentenced Green to life.

On appeal Green argued that the district court had erroneously enhanced his sentence on Count Six when it imposed a term of life in prison. Green states that the Government, in its response to Green's appeal brief, conceded at ¶84 that the district court had erroneously imposed a term of life in prison where this count could not be properly enhanced. The Fifth Circuit opinion does indicate that Green's sentence as to Count Six should not have been enhanced under 21 U.S.C. §841(b)(1)(A).[27] The Fifth Circuit held, however, that because the conspiracy was a continuing offense that began in 1990 and continued until May, 1998, the offenses can be considered prior and enhance Green's sentence for conspiracy. Green's counsel was not ineffective for failing to raise this

---

[27] "His conviction on these offenses occurred after the distribution charged in count 6. The government concedes that count 6 cannot be enhanced pursuant to § 841(b)(1)(A)." *U.S. v. Green* 293 F.3d 886, 894, n. 5 (C.A.5 (La.),2002).

13

issue.

### Was Green deprived of due process and effective assistance of counsel at trial when his counsel admitted in opening statements, without Green's consent, to Green's limited involvement in the conspiracy?

Green argues that he was prejudiced by his counsel's conduct because 1) the concession of limited involvement in the conspiracy at the outset of the trial left the juror's with no other choice but to find him guilty of participation in the charged conspiracy and 2) counsel's conduct was not a tactical strategy. Green argues that this could not be a tactical decision because the government before trial had filed an enhancement pursuant to 21 USC §851 which alleged that Green had two prior drug offenses and upon conviction of participation in the conspiracy, he would face a sentence of life in prison. Thus, denial of Green's involvement would not have been a viable defense. Green argues that but for William's concession that Green was involved in the drug conspiracy, Green would not have been denied due process of law and effective assistance of counsel.

During opening statements, Williams stated without Green's consent:

> We're going to be able to establish through various records and through witnesses that he [Ronald Green] could not have been involved in this big conspiracy for the bulk of the time this conspiracy is supposed to have lasted.

This language falls far short of an admission.

The government argues that Green's attorney made a strategic decision to concentrate on the defendant's involvement in the entire conspiracy rather than in the individual transactions. Counsel may make strategic decisions to acknowledge the defendant's culpability without being ineffective.

14

*Carter v. Johnson,* 131 F.3d 452, 466 (C.A.5 (Tex.),1997).[28]

### Was Green denied his Sixth Amendment right to effective assistance of counsel when counsel failed to advise Green of his career offender status?

At the time of his trial, Green had at least two prior felony drug convictions and the statutory maximum for the 1995 charged offense was life imprisonment. The government filed an enhancement notice based upon the two prior felony convictions.

Green alleges that his attorney never told him that he was being classified as a career offender or what that classification meant to him in terms of sentencing. The government had offered a plea bargain with a sentence of twenty years. Green states that his counsel advised him that his sentence would be higher if he did not accept the plea bargain, but he was not advised that he was a career offender or that he faced life in prison. Green argues that his counsel's failure to explain his career offender status and the § 851 enhancement amounted to ineffective assistance and it led Green to decline a plea offer with a twenty year sentence. Green asserts that if he had known he faced life in prison, he would have accepted the plea offer.

In *United States v. Grammas,* 376 F.3d 433, 438 (5th Cir. 2004), cited by the government, a defendant in a §2255 motion claimed that his attorney misstated his exposure if he were to be found guilty at trial. Because of the information that the attorney gave the defendant, the defendant decided to go to trial rather than plead guilty. The defendant contended that if he had known the actual exposure, he would have pleaded guilty. The attorney had, in fact, miscalculated the defendant's

---

[28] *See Kirkpatrick v. Butler,* 870 F.2d 276, 284-85 (5th Cir.1989); *see also Washington,* 466 U.S. at 689, 104 S.Ct. at 2065 (strong presumption that the strategic decisions of counsel are not ineffective); *Carter v. Johnson,* 131 F.3d 452, 466 (C.A.5 (Tex.),1997).

15

exposure and had underestimated the defendant's possible guideline range.

The court in *Grammas* held that prejudice was contingent upon whether there was a reasonable probability that, but for his attorney's actions, the defendant would have received a lesser sentence than he did. This analysis turns first on whether the defendant would have pleaded guilty if he knew of the true criminal penalty he faced, and second, whether a guilty plea would have indeed reduced the defendant's sentence.

In the case at bar, there is no evidence that Williams did or did not explain the sentence Green would receive if convicted. It is clear that Williams advised Green that he could face a sentence longer than twenty years. The §851 notice made it clear that the government was moving for a life sentence. There is no evidence that the defendant would not have gone to trial had he known his true exposure. Green's unsupported allegations are not sufficient to establish ineffective assistance of counsel. *U.S. v. Grammas*, 376 F.3d 433, 438 (C.A.5 (Tex.), 2004).

<u>Was Green properly classified as a career offender and if so, was Green denied his Sixth Amendment right to effective assistance of counsel at sentencing because his counsel failed to object or challenge the use of prior state convictions?</u>

Green claims that his attorney failed to challenge the prior convictions that were used to enhance his sentence. The proper use of the prior convictions was raised by Green's attorney on direct appeal, was discussed in depth by the Fifth Circuit, and was found to be meritless. Therefore, it cannot be the basis of a claim of ineffective assistance of counsel.

*Brady* Claim

In an amendment to his §2255 motion, Green claims that the prosecution violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), by not giving notice of downward

departures filed on behalf of witnesses who testified against Green. The government argues that this issue could have been raised on direct appeal and should not be considered in this motion. The Fifth Circuit, however, has considered *Brady* arguments within the context of §2255 motions, therefore this court will consider this issue.

The prosecution has a duty to turn over impeachment evidence favorable to an accused when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). There are three components to a *Brady* violation. First, the evidence must be favorable to the accused, a standard that includes impeachment evidence. Second, the State must have suppressed the evidence. Third, the defendant must have been prejudiced. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). It is this final component--the materiality component--that is most at issue in this § 2255 motion.

The materiality inquiry turns on the question of whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). The defendant has the burden to establish a reasonable probability that the evidence would have changed the result. *Strickler*, 527 U.S. at 291, 119 S.Ct. 1936. When there is more than one *Brady* violation, the court must consider the cumulative effect of the suppressed evidence. *Kyles*, 514 U.S. at 421-22, 115 S.Ct. 1555; *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir.1999). Because this court finds that Green did not establish a reasonable probability that the evidence would have produced a different result, the court does not need to consider whether Green established the other *Brady*

components.

The docket sheet of case number 96-20058 indicates that James Brunson, Carlos Dennis, Carmichael Green, Georgeanna Mitchell, and Lionel Goudeau had all pleaded guilty and were sentenced prior to Green's trial. The government filed motions for departures prior to their sentencing, which also predated Green's trial. The government argues that these motions were in the record and available to Green prior to trial and that the government did not conceal any information. This information was in a separate record from Green's case. The motions for departure were filed by the same AUSA who prosecuted Green, so he undoubtedly knew that they existed. The AUSA had a duty to disclose this information to the defense under *Brady*.

The government argues that the testimony at trial did not conflict with the docket sheet in the case of these witnesses. In redirect the prosecutor elicited information that Brunson had already testified in the trial of Charles Allison and had been sentenced.[29] The government argues that this information is consistent with the information contained in the §5K1.1 motion. The government does not say that the prosecutor notified the defense that there had been a 5K1.1 motion filed and that Brunson had received a reduction in his sentence in exchange for his testimony against Allison.

On redirect of Carlos Dennis, the government elicited information that the witness had already been sentenced in a prior case.[30] The government argues that the prosecutor was not hiding the fact that the witness had testified and had been sentenced. This is not the issue, however. The

---

[29] Trial transcript, p. 1233.

[30] Trial transcript, pp. 1157-1158.

18

issue is whether the §5K1.1 motions existed and the government did not produce this exculpatory material to the defense.

Georgeanna Mitchell testified that she had already received a §5K1.1 motion from the government and was hoping for a further reduction through a Rule 35 motion.[31]

Carmichael Green testified that he had already been sentenced and had received a benefit of a motion for a downward departure.[32]

Even though the failure of the Government to produce *Brady* material is inexcusable, the question of materiality, however, is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555. Would this potentially impeaching evidence have created a "reasonable possibility" of a different result? *U.S. v. Hughes*, 230 F.3d 815, 819 -820 (C.A.5 (Tex.), 2000). While Green has established that the existence of all of the §5K1.1 motions was not made known to the defense, he has not established a reasonable probability that the evidence would have produced a different result, especially in light of the fact that other witnesses testified that they had received downward departures. Accordingly, Green will not prevail on this point.

Clearly, the Government had no excuse for not producing *Brady* material. Had this evidence been material, this §2255 motion would have been granted on this issue. Nonetheless, the court finds it quite disturbing that this evidence was not produced. The Government argues that the

---

[31] Trial transcript, pp. 1668-1669.

[32] Trial transcript, p. 287.

information regarding downward departures was in the record[33] and available to the defense, but the burden is on the Government to produce *Brady* material that it knows exists. The defense does not have the duty search for that material. A failure to produce such evidence in the future will strongly weigh in favor of granting post-conviction relief.

## Conclusion

Green's §2255 motion is DENIED with the exception that there will be an evidentiary hearing on his conviction under Count Four of the Indictment.

Lake Charles, Louisiana, this 21 day of February, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[33] This was a separate record from that of Ronald Green.